UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT KATTULA; MARIA KATTULA;
K&B CAPITAL, LLC; LUNA PIER TRUCK
DEPOT, LLC; and US ENVIRONMENTAL
MANAGEMENT, LLC,

Case No. 07-12569

Honorable Nancy G. Edmunds

    Plaintiff(s),

v.

AARON JADE; PRIME FINANCIAL, INC.;
PRIME-CALVERT, LLC; CALVERT
PROPERTIES, LLC; CALVERT
MACHINERY, LLC; PETER
SCHNEIDERMAN; and PETER M.
SCHNEIDERMAN & ASSOCIATES, P.C.,

    Defendant(s).
_____/

**OPINION AND ORDER GRANTING SCHNEIDERMAN DEFENDANTS' MOTION TO DISMISS [6]**

    Plaintiffs Robert Kattula; Maria Kattula; K&B Capital, LLC; Luna Pier Truck Depot, LLC; and U.S. Environmental Management, LLC filed this action against Defendants Aaron Jade; Prime Financial, Inc.; Prime-Calvert, LLC; Calvert Properties, LLC; Calvert Machinery, LLC; Peter Schneiderman; and Peter M. Schneiderman & Associates, PC. Defendants Peter Schneiderman and Peter M. Schneiderman & Associates, PC ("Schneiderman Defendants") filed this motion in lieu of an answer.[1] Although Plaintiffs' complaint sets forth 18 counts, only four counts allege claims against the Schneiderman

---

[1]The remaining Defendants filed an answer to the complaint and are not party to this motion.

Defendants: two RICO claims (Counts II and III), a claim for breach of fiduciary duty (Count XI), and a claim under the Fair Debt Collection Practices Act (Count XII). This matter comes before the Court on the Schneiderman Defendants' motion to dismiss. For the reasons set forth below, the motion is GRANTED.

**I.    Facts**

Plaintiff Robert Kattula is an investor who specializes in the rehabilitation and sale of distressed companies. (Pl.'s Resp. at 6.) Plaintiff Maria Kattula is his spouse. (*Id.*) Ms. Kattula, together with the Maria Kattula Children's Trust, owns Plaintiff K&B Capital, LLC. (*Id.*) Plaintiff Luna Pier Truck Depot, LLC was organized to acquire, complete, and operate an unfinished truck stop in Monroe, Michigan ("the Luna Pier Property"). (*Id.*) Plaintiff U.S. Environmental Management, LLC received certain vacant properties that were transferred from K&B Capital. (*Id.* at 7.)

Defendant Aaron Jade is president and sole stockholder of Defendant Prime Financial, Inc. (Def.'s Mot. at 2.) His company specializes in making commercial loans to businesses that do not qualify for traditional financing. (*Id.*) The Schneiderman Defendants are the attorneys for Jade and Prime Financial and represented them in dealings with Plaintiffs. (*Id.* at 1.)

Beginning in September 2002, Prime Financial entered into a series of loan transactions with one or more of Plaintiffs. (Compl. at ¶ 22.) The first loan was made in September of 2002. (*Id.* at ¶ 31.) Prime Financial loaned Kattula and K&B Capital $1.25 million to purchase the Luna Pier Property. (*Id.*) The loan was secured by a mortgage on the Property and was to be subordinated to third-party construction financing necessary to complete the project. (Pl.'s Resp. at 6.)

A second loan of approximately $600,000 was made to K&B Capital from Prime Financial in March and April of 2004. (Compl. at ¶ 44-45.)

In September 2004, Prime Financial made a third loan to Plaintiffs and others in the amount of $1.42 million ("Waste Path I Loan") that was used to purchase a solid waste disposal business in Kentucky, the Waste Path Sanitary Landfill. (*Id.* at ¶ 50; Def.'s Mot. at 2.) Due to disputes with Kentucky regulatory agencies, K&B Capital transferred its various assets to other parties. (Compl. at ¶ 38.) The membership interest in those entities were sold to two individuals, Dan Sills and Joy Hubb. (Def.'s Resp. at 8.) K&B Capital provided the financial means for the purchase. (*Id.*) The parties dispute whether Defendants knew of these transfers. (Def.'s Mot. at 2; Pl.'s Resp. at 7.) The Landfill was transferred to Waste Path Sanitary Landfill, LLC. (Compl. at ¶ 38.)

Prime Financial made a fourth loan to Plaintiffs and others in October 2004 in the amount of $650,000 ("Waste Path II Loan"). (Compl. at ¶ 73.) In December 2004, Defendant Prime Financial made a fifth loan to Plaintiffs and others in the amount of $350,000 ("Waste Path III Loan").[2] (*Id.* at ¶ 89.)

In August 2005, after Plaintiffs allegedly fell behind in their scheduled loan payments, Prime Financial sent Plaintiffs a series of default notices, prepared and mailed by the Schneiderman Defendants. (*See* Compl., Ex. 22.) In November 2005, Plaintiffs and Prime Financial agreed to restructure their relationship. (Def.'s Mot. at 3; Pl.'s Resp. at 8.) They agreed to transfer ownership of the Landfill to Defendant Calvert Properties (a Kentucky

---

[2] Per the terms of a restructure agreement, the Waste Path III Loan carried a balance of $750,000 as of November 16, 2005. (Compl. at ¶ 93.)

LLC solely owned by Defendant Jade) and to use the profits to pay off the loan obligations. (*Id.*)

On November 16, 2005, Kattula and Calvert Properties executed a Memorandum of Understanding that "sets forth the monetary sharing arrangement regarding Waste Path Sanitary Landfill, LLC ("WPSL") between Calvet [sic] Properties . . . and Robert Kattula." (Compl., Ex. 11.) Per the agreement, WPSL revenue was to be paid first to operating expenses of WPSL, second to amounts owed by WPSL to third party creditors, third to amounts due to Prime Financial from Plaintiffs and other parties, and fourth to Prime Financial to keep current all notes. (*Id.*) Finally, all other revenue received by Calvert Properties (less expenses) was to be shared equally between Calvert Properties and Kattula. (*Id.*)

On May 15, 2006, Kattula, Calvert Properties, and the Schneiderman Defendants entered into an agreement whereby the Schneiderman Defendants would serve as the escrow agent for certain consulting fees payable to Kattula by Calvert Properties. (Compl., Ex. 21.) The agreement contained the following provisions:

> **1. Payments by Calvert.** Calvert will make payments to Kattula, as determined by Calvert, in its sole and absolute discretion, and at such times and in such amounts as determined solely by Calvert. . . .
>
> **4. Rights, Duties, and Responsibilities of Escrow Agent.** It is understood and agreed that the duties of the Escrow Agent are purely ministerial in nature. It is further agreed that:
>
> A. The Escrow Agent shall not be responsible for the performance by the Calvert [sic] of its obligations under this agreement. . . .
>
> C. The Escrow Agent shall not be liable for any action taken or omitted hereunder except in the case of its bad faith, gross negligence or willful misconduct. . . .

4

> D. This Agreement sets forth exclusively the duties of the Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations shall be read into this Agreement against the Escrow Agent.

(*Id.*)

Plaintiffs allege that Defendants have "engaged in a series of sham transactions designed to divert to Prime/Jade *all* the profits from the landfill." (Pl's Resp. at 9; Compl. at ¶ 118.) Plaintiffs also assert that Defendants have "pursued a fraudulent course of action," including "false claims of default" and "the commencement of foreclosure proceedings against the Luna Pier Property." (Pl.'s Resp. at 10.) Plaintiffs filed this lawsuit in March 2007. This matter is now before the Court on the Schneiderman Defendants' motion to dismiss.

## II. Motion to Dismiss Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a Complaint. In a light most favorable to Plaintiff, the court must assume that Plaintiff's factual allegations are true and determine whether the Complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted).

**III. Analysis**

Plaintiffs have asserted four claims against the Schneiderman Defendants: two RICO claims, a claim for breach of fiduciary duty, and a claim for a violation of the Fair Debt Collection Practices Act. The Court will consider each claim in turn.

**A. RICO Claims**

Plaintiffs assert two claims that the Schneiderman Defendants violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c). This provision provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Thus, the elements of a RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

At the outset, Plaintiffs argue that they are not required to plead facts to support each element of their RICO claims. It is well settled, however, that a complaint must present "more than the bare assertion of legal conclusions." *In re Sofamor*, 123 F.3d at 400. Moreover, the Sixth Circuit recently affirmed the dismissal of a RICO claim because the plaintiff made "no attempt in his complaint or in his briefs to present any facts concerning the elements required to prove violation" of the RICO statute. *Elsman v. Standard Fed. Bank*, 46 Fed. Appx. 792, 799 (6th Cir. 2002) (unpublished).[3] *See also Eby v. Producers*

---

[3] Unpublished decisions in the Sixth Circuit are not binding precedent, *Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir. 1996), but their reasoning may be "instructive" or helpful, *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 593 (6th Cir. 2004).

*Co-op, Inc.*, 959 F. Supp. 428, 432 (W.D. Mich. 1997) ("A § 1962(c) claim must include factual allegations supporting each element of the violation with reasonable specificity.") (citation and internal quotation marks omitted). The Court therefore concludes that Plaintiffs must allege facts to establish the elements of a RICO claim.[4] Plaintiffs have failed to do so.

Plaintiffs allege two RICO enterprises: Waste Path Sanitary Landfill (Count II) and Prime Financial (Count III). Accordingly, Plaintiffs must plead facts to establish that the Schneiderman Defendants did "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). "[T]o conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

Plaintiffs' complaint offers only a single mention (per claim) of the Schneiderman Defendant's alleged participation in the two alleged RICO enterprises: "Schneiderman and Peter M. Schneiderman & Associates, P.C. are associated with [the enterprises], directing the affairs of [the enterprises] through the provision of business advice and legal services to [the enterprises]." (Compl. at ¶ 144, 200.) Numerous courts have held, however, that attorneys and law firms who provide independent professional services do not, without more, participate in the operation or management of the enterprise. As this Court recently

---

[4]Plaintiffs claim that Defendants' motion may be granted only if "Plaintiffs could at trial prove no set of facts to support the allegation." (Pl.'s Resp. at 12.) This language was abandoned by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).

noted, "[m]erely aiding and abetting the affairs of an alleged RICO enterprise by approving or pursuing litigation, approving or pursuing Rule 11 sanctions . . . and rejecting of an offer of settlement is insufficient to satisfy the requirement that Defendants . . . 'operated or managed' the alleged RICO enterprise." *EB-Bran Prods., Inc. v. Ritchie,* No. 06-11564, 2006 WL 2811314, *7 (E.D. Mich. Sept. 28, 2006). *See also Nolte v. Pearson,* 994 F.2d 1311, 1317 (8th Cir. 1993) (affirming directed verdict against RICO plaintiff "as there is no evidence suggesting that the attorneys participated in the operation or management of the enterprise"); *Baumer v. Pachl,* 8 F.3d 1341, 1344 (9th Cir. 1993) (dismissing RICO claim against attorney because the preparation of two letters, the preparation of a partnership agreement, and assistance in a Chapter 7 proceeding in which he sent two letters, did not suffice to impute liability under *Reves*). For this reason, the letters drafted by the Schneiderman Defendants (attached to the Complaint as exhibits) fail to establish that they conducted or participated in the alleged RICO enterprises' affairs. Two of the letters notify Plaintiffs of their default status (Compl., Exs. 22, 24), another confirms that Prime Financial purchased certain property and the terms and conditions of the purchase (Ex. 23), and one attempts to collect a debt on the Luna Pier loan (Ex. 27). These letters fail to establish anything other than the fact that the Schneiderman Defendants were the attorneys for Jade and Prime Financial's business dealings. This does not constitute involvement in the "operation or management" of the enterprises.

Moreover, conclusory allegations such as those made in the complaint are insufficient to establish participation in a RICO enterprise. *See Eby,* 959 F. Supp. at 432 (dismissing RICO claim because "complaint is conclusory in nature and merely recites legal conclusions"); *VanDenBroeck v. Commonpoint Mortg. Co.,* 22 F. Supp. 2d 677, 684 (W.D.

Mich.1998) (dismissing RICO claim because the plaintiff's "naked allegation" that the defendants "participated in the conduct of the affairs of the enterprise" was insufficient to sustain a RICO claim). Here, Plaintiffs fail to offer even a single fact to support their allegations of the Schneiderman Defendants' involvement in the RICO enterprises.

In their response brief, Plaintiffs argue that leave to amend their complaint, and not dismissal, is the appropriate response to their failure to plead sufficient facts. Plaintiffs then set forth various facts they would allege in an amended complaint to "support the allegation that the Schneiderman Defendants conducted or participated in the conduct of the RICO enterprises." (Pl.'s Resp. at 12.) These alleged facts, however, fail to establish the Schneiderman Defendants' liability under the RICO statute.

First, Plaintiffs point out that a purchase agreement between Prime and K&B Capital was recorded on the Schneiderman Defendants' letterhead. (*See* Def.'s Mot., Ex. C.) The Schneiderman Defendants point out that this is because they were Prime Financial's attorney for the transaction. (Def.'s Reply at 5.)

Next, Plaintiffs allege that Schneiderman notarized a document in Kentucky, even though he does "not hav[e] the authority or capacity to act as a notary in Kentucky." (Pl.'s Resp., Ex. 5.) Michigan law, however, provides that "[n]otarial acts may be performed outside this state for use in this state with the same effect as if performed by a notary public of this state." Mich. Comp. Laws § 565.262(a).

Third, Plaintiffs note that when Kattula was held in contempt by the Marshall County (KY) Circuit Court and ordered to return funds from property he had sold (he claims on behalf of Prime), he borrowed $30,000 from Schneiderman to pay back the funds. Plaintiffs have provided the promissory note that sets forth the terms of the loan. (Pl.'s Resp., Ex.

9

15.) Rather than establish that Schneiderman was participating in the affairs of the alleged RICO enterprises, the note shows that the loan was a private transaction between Schneiderman and Kattula.

Plaintiffs also allege that the Schneiderman Defendants drafted the Memorandum of Understanding and therefore were aware of the terms of the Restructure Agreement. The Schneiderman Defendants then "drafted and caused to be executed numerous other documents including . . . several purported lease agreements." (Pl.'s Resp. at 14.) This is consistent with the Schneiderman Defendants' role as attorney to Jade and Prime Financial.

Plaintiffs next point out that the Schneiderman Defendants acted as Kattula's escrow agent for certain funds to be paid to Kattula from Calvert. This argument is addressed and disposed of below.

Plaintiffs argue that the Schneiderman Defendants sent improper notices of default, commenced improper foreclosure proceedings against the Luna Pier Property, and violated the Fair Debt Collection Practices Act. Plaintiffs' first two arguments are discussed above, and Plaintiffs' third argument is considered below.

Finally, Plaintiffs allege that the Schneiderman Defendants drafted an amendment to a purchase agreement and that the amendment referenced a non-existent oral agreement. Again, this was done as part of the Schneiderman Defendants' legal representation of Jade and Primae Financial.

Plaintiffs' allegations simply establish that the Schneiderman Defendants drafted legal documents for their clients. As already noted, this does not qualify as participation in a RICO enterprise. Thus, even if Plaintiffs were granted leave to amend their complaint, they

would be unable to establish a RICO claim against the Schneiderman Defendants. Accordingly, the Schneiderman Defendant's motion to dismiss is GRANTED as to both of Plaintiffs' RICO claims (Counts II and III in the complaint). Because the Court grants the motion on this basis, it is not necessary to address the Schneiderman Defendants' additional arguments that Plaintiffs have failed to establish a "predicate act" or a pattern of racketeering.

### B. Breach of Fiduciary Duty

Count XI of Plaintiffs' complaint alleges that the Schneiderman Defendants breached their fiduciary duty to Kattula to remit to him the consulting fees due under the escrow agent agreement. (Compl. at ¶ 300-301.) Plaintiffs' claim fails for two reasons.

First, the agreement does not establish the fiduciary duty claimed by Plaintiffs.[5] The agreement explicitly states that "the duties of the Escrow Agent are purely ministerial in nature." Additionally, any payments to Kattula from Calvert were to be "determined by Calvert, in its sole and absolute discretion," and the Schneiderman Defendants "shall not be responsible for the performance by the Calvert [sic] of its obligations under this Agreement." Finally, the "Agreement sets forth exclusively the duties of the Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligation shall be read into this Agreement against the Escrow Agent." Because the agreement does not

---

[5]Because the agreement was attached as an exhibit to the complaint, the Court may consider it for purposes of a 12(b)(6) motion. *See, e.g., Benzon v. Morgan Stanley Distributors, Inc.,* 420 F.3d 598, 603 (6th Cir. 2005) (noting that "a written instrument attached as an exhibit to a pleading is considered a part of the pleading" and does not require a motion to dismiss to be treated as one for summary judgment).

impose any fiduciary duty on the Schneiderman Defendants, and in fact expressly relieves them of such a duty, Plaintiffs' claim must fail.

Second, even if Plaintiffs were owed a fiduciary duty, they have made no factual allegations to support their claim; rather, they make the bare assertion of the legal conclusion that "Schneiderman has breached his duty." (Compl. at ¶ 301.) As discussed above, such a bare conclusion is insufficient to establish a claim.

As Plaintiffs have failed to state a valid claim for breach of fiduciary duty, the Schneiderman Defendants' motion is GRANTED as it relates to this claim.

### C. Fair Debt Collection Practices Act

Plaintiffs' final claim against the Schneiderman Defendants, found in Count XII of the complaint, alleges that they violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The Schneiderman Defendants do not challenge that they are "debt collectors" as defined in the FDCPA. 15 U.S.C. § 1692a(6). Nor do they contest that Kattula is a "consumer" within the meaning of § 1692a(3). Rather, the Schneiderman Defendants argue that the FDCPA does not apply to the Luna Pier Loan, the focus of Count XII, because the loan is not a "debt" under the FDCPA as it was not made "primarily for personal, family, or household purposes." *Id.* at § 1692a(5). *See First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995) (because "agreement was not personal in nature, it does not constitute a debt as defined by the federal statute"); *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1074 (9th Cir. 2001) (FDCPA does not apply to business loans).

Plaintiffs' complaint describes the Luna Pier loan as follows: "In September, 2002, K&B Capital and Robert Kattula, as more particularly described below, borrowed from Prime Financial the sum of $1,250,000.00 to purchase the truck stop." (Compl. at ¶ 31.)

It also references "the loan to purchase the truck stop." (*Id.* at ¶ 32.) The complaint does not allege that the loan was "for personal, family, or household purposes." Instead, Plaintiffs argue that the loan was an FDCPA debt "as evidenced by the December 14, 2006 'Notice of Default' and subsequent February 23, 2007 'Notice'" drafted and sent by the Schneiderman Defendants.[6] (Compl. at ¶ 306.)

These letters, however, do not support Plaintiffs' allegations. The December 2006 "Notice of Default" simply states that the Luna Pier loan is in default; it contains no information regarding the nature of the loan or the purposes for which it was used. (Compl., Ex. 24.) The February 2007 "Notice" informs Plaintiffs of information they are entitled to under the FDCPA. (Compl., Ex. 27.) Nonetheless, the 2007 "Notice" contains no information that establishes that the loan was primarily for personal purposes. And while the Schneiderman Defendants may have believed that the FDCPA applied to the Luna Pier loan, that does not mean that the FDCPA actually does apply. Plaintiffs have failed to allege facts to establish that the Luna Pier loan is a "debt" under the FDCPA. Accordingly, the Schneiderman Defendants' motion to dismiss this claim is GRANTED.

In an effort to save the FDCPA claim, Kattula submitted a sworn affidavit in which he states that, with respect to the Luna Pier loan, only $250,000 was used for business purposes, and the remaining $1 million was used for various personal, family, and household purposes. (Pl.'s Resp., Ex. 2 at ¶ 2.) This affidavit is a matter outside the pleadings and was not considered by the Court for purposes of this motion. Nonetheless, the Court finds it necessary to address the affidavit as it is demonstrably false and

---

[6]These letters were attached to the complaint and may be considered by the Court for purposes of the motion this motion.

constitutes a transparent attempt to maintain a cause of action for which there is no factual basis.[7]

To begin, Plaintiffs' complaint states that the purpose of the loan was to purchase the Luna Pier truck stop. (Compl. at ¶ 31.) Moreover, a sworn "Business Purpose Affidavit" signed by Kattula states that the $1.25 million loan "shall be used solely for business purposes only [sic]." (Def.'s Reply, Ex. B.) The Luna Pier mortgage, also signed by Kattula, recites that the $1.25 million loan is "a commercial loan, and that all of the proceeds of the Loan will be used solely to acquire or carry on a business or commercial enterprise." (Def.'s Reply, Ex. F at ¶ 37.) The Quit Claim Deed that transferred the Luna Pier Property to K&B Associates sets forth a price of $1.2 million. (Def.'s Reply, Ex. D.) Based on this information, it is clear that the entirety of the Luna Pier loan was used for business purposes.

Thus, although Fed. R. Civ. P. 15(a) states that leave to amend "shall be freely given when justice so requires," the Court may consider a party's bad faith when it considers whether to grant an amendment. *See Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998). Because Kattula's affidavit was made in bad faith, the Court will not allow Plaintiffs to amend the complaint to include the information provided in the affidavit.

**IV. Conclusion**

---

[7]Plaintiff references a "Business Purpose Affidavit" for a $250,000 loan. (Pl.'s Resp., Ex. 1). Plaintiff argues that this establishes the non-business character of the remaining $1 million of the Luna Pier loan. (Pl.'s Resp. at 23.) Plaintiffs fail to mention that on the same day this Affidavit was executed, a separate "Business Purpose Affidavit" was executed in the amount of $1.25 million. (Def.'s Reply, Ex. B.)

For the foregoing reasons, the Schneiderman Defendants' motion to dismiss is GRANTED in its entirety.

s/Nancy G. Edmunds<br>
Nancy G. Edmunds<br>
United States District Judge

Dated: February 20, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 20, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer<br>
Case Manager