UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT KATTULA; MARIA KATTULA;
K&B CAPITAL, LLC; LUNA PIER TRUCK          Case No. 07-12569
DEPOT, LLC; and US ENVIRONMENTAL
MANAGEMENT, LLC,                           Honorable Nancy G. Edmunds

      Plaintiff(s),

v.

AARON JADE; PRIME FINANCIAL, INC.;
PRIME-CALVERT, LLC; CALVERT
PROPERTIES, LLC; CALVERT
MACHINERY, LLC; PETER
SCHNEIDERMAN; and PETER M.
SCHNEIDERMAN & ASSOCIATES, P.C.,

      Defendant(s).
                                        /

**OPINION AND ORDER GRANTING PRIME DEFENDANTS' MOTION TO DISMISS
COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) [31]**

      Plaintiffs Robert Kattula; Maria Kattula; K&B Capital, LLC; Luna Pier Truck Depot, LLC; and U.S. Environmental Management, LLC filed this action against Defendants Aaron Jade; Prime Financial, Inc.; Prime-Calvert, LLC; Calvert Properties, LLC; Calvert Machinery, LLC; Peter Schneiderman; and Peter M. Schneiderman & Associates, PC.[1] Plaintiffs' complaint sets forth 18 counts; in this motion, Defendants challenge only Counts II and III, which are made pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c). Defendants assert that Plaintiffs' RICO claims must fail

---

[1]The Court granted the Schneiderman Defendants' motion to dismiss in an opinion and order dated February 20, 2008. (Docket Text #34.) Accordingly, any reference to "Defendants" in this opinion is exclusive of the Schneiderman Defendants.

because Plaintiffs have not established: 1) that Defendants conducted or participated in the alleged RICO enterprises, and 2) a pattern of racketeering. This matter comes before the Court on Defendants' motion to dismiss. For the reasons set forth below, Defendants' motion is GRANTED.

**I.      Facts**

The bulk of the relevant facts in this case are set forth in the Court's Opinion and Order of February 20, 2008 (Docket Text #34) and will not be repeated here. The Court will provide a brief summary of those facts as well as additional facts pertinent to this motion.

This is a commercial dispute that arises out of a series of loan agreements between Plaintiff Kattula (and his various business entities) and Defendant Jade (and his various business entities). Jade is the president and sole stockholder of Defendant Prime Financial, Inc. From September 2002 to December 2004, Defendant Prime Financial entered into a series of loan transactions with Plaintiffs. In August 2005, Plaintiffs allegedly fell behind in their scheduled loan payments. As a result, the parties agreed to restructure their relationship in November 2005. As part of the restructuring, 90% of the membership interest in the Waste Path Sanitary Landfill was transferred to Defendant Calvert Properties, which was created as part of the acquisition. (Compl. at ¶ 114; Def.'s Mot. at 13.) Defendants Prime-Calvert and Calvert Machinery also were created as part of the acquisition. (Def.'s Mot. at 13.)

This lawsuit arises out of Defendants' alleged failure to abide by the terms of the restructure agreement. (Pl.'s Resp. at 6-7.) This matter is now before the Court on Defendants' motion to dismiss.

## II. Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a Complaint. In a light most favorable to Plaintiff, the court must assume that Plaintiff's factual allegations are true and determine whether the Complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted).

As observed by the Sixth Circuit, the Supreme Court recently clarified what a plaintiff must plead to survive a Rule 12(b)(6) motion to dismiss. *Assoc. of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Specifically, it rejected the standard announced in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957).

> The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 127 S. Ct.] at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule

> 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 S. Ct. at 1969.

*Assoc. of Cleveland Fire Fighters*, 502 F.3d at 548. The Court's function "is not to weigh the evidence or assess the credibility of witnesses but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003) (internal citations omitted).

### III. Analysis

Plaintiffs' complaint sets forth 18 causes of action. Counts II and III assert that Defendants violated 18 U.S.C. § 1962(c) of the RICO Act. This provision provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To prove a § 1962(c) violation, "[P]laintiffs must show 1) that there were two or more predicate offenses; 2) that an 'enterprise' existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors." *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000).

At the outset, Plaintiffs once again argue that they are not required to plead facts to support each element of their RICO claims. The Court already rejected this argument

4

when it granted the Schneiderman Defendants' motion to dismiss. As the Court noted, it is well settled that a complaint must present "more than the bare assertion of legal conclusions." *In re Sofamor*, 123 F.3d at 400. Moreover, the Sixth Circuit recently affirmed the dismissal of a RICO claim because the plaintiff made "no attempt in his complaint or in his briefs to present any facts concerning the elements required to prove violation" of the RICO statute. *Elsman v. Standard Fed. Bank*, 46 Fed. Appx. 792, 799 (6th Cir. 2002) (unpublished).[2] *See also Eby v. Producers Co-op, Inc.*, 959 F. Supp. 428, 432 (W.D. Mich. 1997) ("A § 1962(c) claim must include factual allegations supporting each element of the violation with reasonable specificity.") (citation and internal quotation marks omitted). The Court therefore reiterates that Plaintiffs must, to survive a motion to dismiss, allege facts to establish each element of their RICO claims.

Plaintiffs allege two RICO enterprises: Waste Path Sanitary Landfill (Count II) and Prime Financial (Count III). The Court will address each claim separately.

### A. Count II - Waste Path Sanitary Landfill as RICO Enterprise

Plaintiffs' RICO claim in Count II, which alleges that the Waste Path Sanitary Landfill ("the Landfill") is a RICO enterprise, is asserted against each Defendant. Defendants challenge Plaintiffs' ability to maintain this cause of action on two grounds. First, Defendants charge that Plaintiffs have failed to establish that Defendants did "conduct or participate, directly or indirectly, in the conduct of [the RICO] enterprise's affairs." 18 U.S.C. § 1962(c). "[T]o conduct or participate, directly or indirectly, in the conduct of such

---

[2]Unpublished decisions in the Sixth Circuit are not binding precedent, *Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir. 1996), but their reasoning may be "instructive" or helpful, *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 593 (6th Cir. 2004).

enterprise's affairs, one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). As the Court noted in its opinion and order with respect to the Schneiderman Defendants, conclusory allegations are insufficient to establish participation in a RICO enterprise. *See Eby*, 959 F. Supp. at 432 (dismissing RICO claim because "complaint is conclusory in nature and merely recites legal conclusions"); *VanDenBroeck v. Commonpoint Mortg. Co.*, 22 F. Supp. 2d 677, 684 (W.D. Mich.1998), *aff'd*, 210 F.3d 696 (6th Cir. 2000) (dismissing RICO claim because the plaintiff's "naked allegation" that the defendants "participated in the conduct of the affairs of the enterprise" was insufficient to sustain a RICO claim).

The Court will address in turn the factual allegations made in the complaint with respect to each Defendant's alleged participation in the operation or management of the Landfill.

### 1. Defendant Aaron Jade

Plaintiffs assert various ways in which Defendant Jade participated in the operation or management of the Landfill. First, Plaintiffs' complaint states that Jade directs the affairs of the Landfill "through the provision of legal advice and financial services." (Compl. at ¶ 143.) This is precisely the type of "bare assertion of legal conclusions" the Court rejected in its previous opinion and order. *In re Sofamor*, 123 F.3d at 400. Thus, Plaintiffs cannot establish the requisite level of participation by Jade on this basis.

Plaintiffs also seek to establish Jade's participation in the Landfill based on his involvement with Calvert Properties. (*See* Compl. at ¶ 147 ("Aaron Jade, through his titular ownership . . . of all of the membership interests in Calvert Properties . . . participated directly or indirectly in the operation and management of [the] Landfill"); ¶ 71 ("Aaron Jade

. . . [is] the sole member of Calvert Properties"); Pl.'s Resp. at 11-12 (due to "transfer of ownership of the landfill to Calvert Properties . . . Jade appears to . . . be directly operating the landfill"). As discussed below, however, Plaintiffs cannot establish that Calvert Properties participated in the operation or management of the Landfill. Accordingly, Jade's association with Calvert Properties cannot serve as the basis for his liability as a RICO defendant.

Finally, as another basis for Jade's alleged RICO liability, Plaintiffs point to a Business Consulting Agreement between Calvert Properties and the Landfill. (Compl. at ¶ 118(d).) Because Jade is the sole member of Calvert Properties, Plaintiffs argue, he must have performed the consulting services required by the Agreement. (Pl.'s Resp. at 11.) The Agreement requires Calvert Properties to provide "referrals of new business prospects, recommendations for improvements in the delivery of services, industry specific marketing advice, and general business advise and assistance to help the Company expand the quantity and quality of its operations." (Compl., Ex. 21 at Ex. A (*see* Docket Text #1, Document #24).) Based on this provision, even if Jade were acting as the consultant to the Landfill, his role was limited to making referrals, recommendations, and offering advice. These types of consulting services are not akin to "operation or management of the enterprise itself." *Reves*, 507 U.S. at 185. As a result, Jade cannot be made a RICO Defendant based on the possibility that he provided consulting services to the alleged RICO enterprise.

Plaintiffs cannot establish that Defendant Jade participated in the operation or management of the Landfill. Accordingly, Defendants' motion to dismiss is GRANTED with respect to Count II as it relates to Defendant Jade.

### 2. Defendant Calvert Properties

Plaintiffs seek to impose RICO liability on Defendant Calvert Properties because it holds a 90% interest in the Landfill. (Compl. at ¶ 114; Pl.'s Resp. at 10.) Plaintiffs concede, however, that the Complaint does not "fully explain why that allegation is sufficient to bind Calvert Properties as a RICO Defendant." (Pl.'s Resp. at 10.) As the purpose of a motion to dismiss is to test the sufficiency of the complaint, this concession is an adequate ground upon which to grant Defendants' motion with respect to Calvert Properties on Count II.

Plaintiffs, in their response brief, attempt to explain the connection by referring to the management provisions of the Landfill's Operating Agreement. (Pl.'s Resp. at 10.) This Agreement was not incorporated by reference or attached to the Complaint; the Court therefore will not consider this document for purposes of a motion to dismiss.[3]

Additionally, as discussed above, the Business Consulting agreement between Calvert Properties and the Landfill is an insufficient basis by which to impose RICO liability.

Consequently, because Plaintiffs cannot establish the requisite level of participation in the alleged RICO enterprise by Defendant Calvert Properties, Defendants' motion to dismiss is GRANTED as to Calvert Properties' liability under to Count II.

### 3. Defendant Prime-Calvert

---

[3]"As the language of the rule suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright and Miller, Federal Practice & Procedure: Civil § 1366 at 159 (2004).

Plaintiffs claim that Defendant Prime-Calvert is a valid RICO Defendant because it leased land to the Landfill. (Compl. at ¶ 118(c); Pl.'s Resp. at 12.) Plaintiffs attempt to frame this as Prime-Calvert having directly participated "in the determination of the . . . land to be held available for expansion of the landfill." (Pl.'s Resp. at 12.) Plaintiffs also state that Prime-Calvert "caused the expenditures of funds of [the Landfill] to meet the 'lease' obligations that are in fact continuing 'interest' payments to Prime upon fully satisfied debt obligations." (*Id.*) The Court rejects this argument. Leasing land to an entity, and being paid for the lease, does not in any way constitute participation in the operation or control of that entity. Plaintiffs have not suggested that the Landfill was forced or coerced into the lease; Plaintiffs allege only that "Prime Calvert leased to [the Landfill] . . . 600 +/- acres." (Compl. at ¶ 118(c).) Accordingly, the complaint establishes that it was the Landfill itself, when it chose to enter into a lease with Prime-Calvert, that made "the determination of the . . . land to be held available for expansion." As a result, Defendants' motion to dismiss is GRANTED with respect to Defendant Prime-Calvert's liability pursuant to Count II.

### 4. Defendant Calvert Machinery

Plaintiffs' attempt to establish Defendant Calvert Machinery as a RICO defendant is similar to their attempt to impose liability on Defendant Prime-Calvert. Only instead of land, Plaintiffs allege that "Calvert Machinery leased to [the Landfill] certain unidentified equipment." (Compl. at ¶ 118(b).) Plaintiffs argue that, because of this "equipment lease," Calvert Machinery has "directly participated in the determination of the specific equipment to be used by [the Landfill] in its operations." (Pl.'s Resp. at 12.) The Court rejects this argument for the same reason it rejected Plaintiffs' argument with respect to Prime-Calvert.

9

The Court therefore GRANTS Defendants' motion as it relates to Calvert Machinery's liability under Count II.

### 5. Defendant Prime Financial

The sole basis by which Plaintiffs seek to establish Defendant Prime Financial's RICO liability is "its titular ownership . . . of Prime-Calvert." (Compl. at ¶ 147.) As the Court has determined that Prime-Calvert is not a proper RICO Defendant, Prime Financial's ownership of Prime-Calvert is not sufficient to establish Prime Financial as a RICO Defendant.

Accordingly, Defendants' motion is GRANTED with respect to Defendant Prime Financial's liability pursuant to Count II.

In sum, Plaintiffs have failed to plead facts to establish that Defendants participated in the operation or management of the Landfill. Thus, Plaintiffs have not established that Defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). Accordingly, the Court GRANTS Defendants' motion to dismiss Count II of Plaintiffs' complaint.

## B. Count III - Prime Financial as RICO Enterprise

Count III alleges that Prime Financial is a RICO Enterprise and that Aaron Jade is the RICO Defendant. Unlike Count II, Plaintiffs have pleaded sufficient facts to illustrate that Jade participated in the operation or management of Prime Financial. The complaint alleges that Jade owns all of the stock in Prime Financial and is the enterprise's sole officer and director. (Compl. at ¶ 203.) This adequately establishes Jade's participation in Prime

Financial. *See* Mich. Comp. Laws § 450.1501 ("The business and affairs of a corporation shall be managed by or under the direction of its board.")[4]

Defendants also assert that Count III should be dismissed because Plaintiffs have failed to plead "a pattern of racketeering activity." 18 U.S.C. § 1962(c). Racketeering activity is defined as any act "indictable" under various federal criminal statutes and as any act "chargeable" as certain types of state felonies. 18 U.S.C. § 1961(c). "In order to establish 'racketeering activity' the plaintiffs must allege a predicate act under 18 U.S.C. § 1961(1)." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (citation omitted). Plaintiffs have asserted three separate predicate acts: extortion, 18 U.S.C. § 1951(b)(2); mail and wire fraud, 18 U.S.C. § § 1341 and 1343; and obstruction of justice, 18 U.S.C. § 1503.[5] (Compl. at ¶ ¶ 223, 225, 230.) Defendants argue that Plaintiffs have failed to allege mail or wire fraud with the requisite particularity, failed sufficiently to allege extortion, and failed to allege a pattern of racketeering. The Court will address each argument in turn.

### 1. Mail and Wire Fraud

Fed. R. Civ. P. 9(b) requires a party to "state with particularity the circumstances constituting fraud." "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citation and

---

[4]Prime Financial is a Michigan corporation. (Compl. at ¶ 7.)

[5]Each of these acts qualifies as racketeering activity pursuant to 18 U.S.C. § 1961(1).

internal quotation marks omitted). This holds true when fraud is used as a predicate act in a RICO case. *See Blount Fin. Servs., Inc. v. Walter E. Heller and Co.*, 819 F.2d 151, 152 (6th Cir. 1987) ("Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact.").[6]

Plaintiffs argue that the "Complaint sets forth in almost excruciating detail - in the first 119 paragraphs - much of the factual basis for the claims." (Pl.'s Resp. at 15.) Plaintiffs also suggest that the "essence" of the fraudulent conduct is described throughout the complaint. (*Id.* at 16.) While the first 119 paragraphs of the Complaint do contain a great deal of factual information, they do not set forth the time, place, and content of any alleged misrepresentations made by Jade. Moreover, as already noted, pleading the "essence" of fraud is insufficient to establish fraud as a predicate act for the purposes of a RICO claim.

The Court finds, however, that Plaintiffs have done more than plead the "essence" of fraud; Plaintiffs have pleaded a sufficient factual basis to establish their allegations of fraud.

---

[6]Plaintiffs rely on *Michaels Building Co. v. Amertirust Co. N.A.*, 848 F.2d 674, 679 (6th Cir. 1988), for the proposition that "it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." Plaintiffs argue that this means that "the circumstances of the alleged fraud must be pled with particularity," but not the facts. (Pl.'s Resp. at 14) (emphasis original). In a subsequent opinion, the Sixth Circuit cited and clarified the holding in *Michaels*. The court held, "Even against Rule 8's backdrop admonition of simplicity in pleading . . . allegations of fraudulent misrepresentations must be made with sufficient particularity and with a sufficient *factual* basis to support an inference that they were knowingly made." *Auto Club*, 176 F.3d at 322 (emphasis added) (citation and internal punctuation omitted). The Court thus rejects Plaintiffs' argument that they need not present facts to establish their allegations of fraud.

"The elements of mail and wire fraud are: (1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme." *Auto Club*, 176 F.3d at 322.  The *Auto Club* court recognized that "[a] scheme to defraud consists of intentional fraud" and explained that "[t]o allege intentional fraud, there must be proof of misrepresentations or omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension. Thus, the plaintiffs must allege with particularity a false statement of fact made by the defendant which the plaintiff relied on." *Id.*

Here, Plaintiffs allege that, "[c]ommencing in November 2005, the RICO Defendants used Prime Financial . . . to fraudulently promise[] . . . to (a) cancel $1,770,000.00 in debt owed by Plaintiffs to Prime Financial . . . which promise[] the RICO Defendants knew, at the time they made such, would not be honored by Prime Financial."  (Compl. at ¶ 216.) Plaintiffs also allege that "[t]he success of the scheme depended on the ability of the RICO Defendants making Plaintiffs believe that $1,770,000.00 in debt had been extinguished, but in fact preserving (albeit in disguised form) that debt."  (*Id.* at ¶ 218.)  This constitutes an allegation that Jade made a misrepresentation that was calculated "to deceive persons of ordinary prudence and comprehension."  *Auto Club*, 176 F.3d at 322.

The Court thus concludes that Plaintiffs have pleaded fraud with the required particularity to serve as a predicate act for the Count III RICO claim.[7]

---

[7]Plaintiffs also allege that Jade fraudulently represented the amount of "outstanding indebtedness of Plaintiffs to Prime Financial, and the financial condition and affairs of Plaintiffs, with the intent to deny payments to Calvert Properties."  (Compl. at ¶ 211.) Because this allegation does not include the time, place, or content of the alleged misrepresentations, it is not sufficiently particular to serve as a predicate act for Plaintiffs' RICO claim in Count III.

### 2. Extortion

As a separate predicate act for purposes of Jade's purported RICO liability, Plaintiffs assert that Jade's alleged actions "constituted extortion . . . in violation of 18 U.S.C. § 1951(b)(2)." (Compl. at ¶ 223.) Defendants argue that Plaintiffs have failed to plead the required elements of extortion under Michigan law. (Def.'s Mot. at 19.) As just noted, however, Plaintiffs' extortion claim is based on federal law; accordingly, Defendants' argument with respect to Michigan law is irrelevant.

18 U.S.C. § 1951 prohibits "extortion," which is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." *Id.* at (b)(2). "Fear" under this provision includes fear of economic harm: "Under the 'fear of economic harm' theory, the defendant receives payment from the victim because the victim believes that the defendant can exercise his or her power to the victim's economic detriment." *United States v. Kelley*, 461 F.3d 817, 826 (6th Cir. 2006).

Plaintiffs argue they have sufficiently pleaded facts to establish a violation of § 1951. Plaintiffs allege that Jade used "Prime Financial to instill in Waste Path Sanitary Landfill the fear of economic harm." (Compl. at ¶ 209.) Plaintiffs also allege that Jade's purpose was to compel the Landfill "to pay sums to Prime Financial in the absence of consideration." (*Id.*) Accordingly, Plaintiffs have pleaded sufficient facts to establish that "the defendant receives payment from the victim because the victim believes that the defendant can exercise his or her power to the victim's economic detriment." *Kelley*, 461 F.3d at 826.

Thus, Plaintiffs have pleaded a violation of 18 U.S.C. § 1951 as a predicate act to the RICO claim in Count III.

### 3. Obstruction of Justice

Plaintiffs' third alleged predicate act under Count III is obstruction of justice in violation of 18 U.S.C. § 1503. That provision provides, in relevant part, that an individual may not "corruptly . . . influence[], obstruct[], or impede[], or endeavor[] to influence, obstruct, or impede, the due administration of justice." *Id.* Plaintiffs' allegation with respect to § 1503 consists of a single paragraph and states:

> The RICO Defendants violated 18 U.S.C. § 1503 (obstruction of justice) by falsely representing to the United States Bankruptcy Court for the Western District of Kentucky . . . that [the Landfill] had produced all documents . . . responsive to that subpoena duces tecum dated December 13, 2006.

(Compl. at ¶ 230.)

The subpoena at issue, which was attached to the complaint, was directed to the Landfill, not to Prime Financial or to Jade. (Compl., Ex. 25 (*see* Docket Text #1, Document #28).) Because the Landfill is not implicated in Count III (either as an alleged RICO enterprise or as an alleged RICO Defendant), the Court fails to see how the Landfill's failure to respond to a subpoena can be imputed to Jade.[8] As a result, Plaintiffs' allegation of obstruction of justice cannot serve as a predicate act for the alleged RICO violation of Count III.

### 4. Pattern of Racketeering

Defendants' final argument in their motion to dismiss is that Plaintiffs have failed to establish that Defendants have engaged in a pattern of racketeering activity. A pattern requires at least two predicate acts. 18 U.S.C. § 1961(5). Nonetheless, "proof of two acts of racketeering activity, without more, does not establish a pattern*.*" *H.J. Inc. v. Nw. Bell*

---

[8]As discussed *supra* at page 8, Defendant Calvert Properties holds a 90% interest in the Landfill, and Plaintiffs concede that the complaint does not explain why Calvert Properties is a proper RICO Defendant.

15

*Tel. Co.*, 492 U.S. 229, 238 (1989). "In addition to proving the prerequisite of two predicate acts, a plaintiff must show both a relationship between the predicates and the threat of continuing activity. It is this factor of continuity plus relationship which combines to produce a pattern." *Vild v. Visconsi*, 956 F.2d 560, 565-66 (6th Cir. 1992) (citation and internal quotation marks omitted).

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. Continuity over a closed period of time consists of "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242.

Plaintiffs' RICO claims are supported by at least two separate predicate acts. Plaintiffs have alleged: 1) mail and wire fraud, and 2) extortion; they have also alleged multiple occurrences of each type of predicate act. Plaintiffs also have established that the predicate "acts are related in terms of purpose (to obtain payment from Waste Path Sanitary Landfill to gain and retain control of the Luna Pier Property)." (Compl. at ¶ 233.) The question remains whether Plaintiffs have satisfied the continuity requirement. The Court holds that they have not.

Plaintiffs have not illustrated closed-ended continuity. The fraud claims are based on Defendants' alleged promises that "commenc[ed] in November 2005" and that resulted in the memorialization of the "Restructure Agreement . . . on November 16, 2005." (Compl. at ¶ ¶ 109, 216.) Thus, at most, the promises lasted a period of two weeks, hardly a

"substantial period of time." With respect to the alleged extortion, Plaintiffs claim simply that Defendants "wrongfully used extortionate threats . . . to instill in the Borrowers the fear of economic harm." (Compl. at ¶ 219.) Because Plaintiffs have provided no time frame, the Court cannot determine that the alleged extortion lasted for a substantial period. Accordingly, Plaintiffs cannot establish a pattern of racketeering activity based on a closed period of time.

Plaintiffs also have failed to plead facts to establish open-ended continuity - "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. Per the Complaint, the allegedly fraudulent conduct consisted of promises that lasted no longer than the first two weeks of November 2005, the purpose of which was to make "Plaintiffs believe that $1,770,000.00 in debt had been extinguished, but in fact preserving (albeit in disguised form) that debt." (Compl. at ¶ 218.) That goal was accomplished when the Restructure Agreement was signed that same month. (*Id.* at ¶ 109.) Thus, Plaintiffs have not pleaded facts to establish that the allegedly fraudulent activity "projects into the future with a threat of repetition." That activity therefore cannot serve as the basis of a "pattern of racketeering activity."

Plaintiffs' attempt to use extortion as a predicate act fails for the same reason. Plaintiffs argue that Defendants used "extortionate threats . . . to instill in the Borrowers the fear of economic harm, as a means of causing the Plaintiffs to 'accept' the terms of the scheme." (Compl. at ¶ 219.) Given that the goal of the alleged "extortionate threats" was accomplished (as the Plaintiffs accepted the terms of the "scheme"), and given that Plaintiffs have not asserted that Defendants continue to make "extortionate threats,"

17

Plaintiffs have not set forth facts to establish extortionate activity that "projects into the future with a threat of repetition."

Because Plaintiffs have not established a "pattern of racketeering activity" with respect to the RICO claim in Count III, Defendants' motion to dismiss is GRANTED with respect to Count III.

### C. Jurisdiction Over Remaining Claims

Plaintiffs' complaint in this case sets forth 18 causes of action. The only substantive federal claims are the two RICO claims located in Counts II and III of the complaint. The Court has dismissed these claims. The remainder of Plaintiffs' claims seek declaratory relief (Counts IV, VI-XII, XVI) or are state law claims (Counts I, V, XIII-XV, XVII, XVIII). Counts XI and XII were asserted only against the Schneiderman Defendants and were dismissed previously in the Court's opinion and order of February 20, 2008. (Docket Text # 34.)

The Declaratory Judgment Act provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. "The operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction. When concerned as we are with the power of the inferior federal courts to entertain litigation within the restricted area to which the Constitution and Acts of Congress confine them, 'jurisdiction' means the kind of issues which give right of entrance to federal courts." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (citation omitted). In other words, for the Court to have jurisdiction

over Plaintiffs' declaratory judgment claims, the Court must have jurisdiction over the underlying claims for which a declaratory judgment is sought. This was not the case in *Skelly Oil*, and the Court concluded, "Since the matter in controversy as to which Phillips asked for a declaratory judgment is not one that 'arises under the . . . laws . . . of the United States' and since . . . jurisdiction cannot be sustained on the score of diversity of citizenship, the proceedings against them should have been dismissed." *Id.* at 674.

Here, similarly, the matters for which Plaintiffs seek declaratory judgments do not arise under the laws of the United States. Count IV concerns the validity of a mortgage; Counts Vi through X relate to usury claims; and Count XVI involves Plaintiffs' obligations under various loans. And as mentioned above, Counts XI and XII were dismissed previously. Further, diversity does not exist in this case. Accordingly, the Court does not have subject matter jurisdiction over these claims. Counts IV, VI through X, and XVI are therefore DISMISSED.

The Court's jurisdiction over Plaintiffs' state law claims is premised on 28 U.S.C. § 1367, which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* at (a). The statute goes on to state, "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." *Id.* at (c)(2). Because the Court has dismissed all claims over which it has original jurisdiction, it will decline to exercise

19

supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, Counts I, V, XIII through XV, XVII, and XVIII are DISMISSED WITHOUT PREJUDICE.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' RICO claims in Counts II and III are DISMISSED for failure to state a claim upon which relief can be granted. Plaintiffs' requests for declaratory judgments in Counts IV, VI through X, and XVI are DISMISSED due to lack of subject matter jurisdiction. Plaintiffs' state law claims in Counts I, V, XIII through XV, XVII, and XVIII are DISMISSED WITHOUT PREJUDICE because the Court will not exercise supplemental jurisdiction over these claims as it has dismissed all claims over which it has original jurisdiction.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: April 23, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 23, 2008, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager